CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Jose Madriz**,<br><br>           Plaintiff,<br><br>     v.<br><br>**Pramote Sookprasert**;<br>**Panawadee Sookprasert**;<br>**Vichai Jarusrojvuthikul**; and Does 1-10,<br><br>           Defendants. | **Case No**.<br><br>**Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

   Plaintiff Jose Madriz complains of Pramote Sookprasert; Panawadee Sookprasert; Vichai Jarusrojvuthikul; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1.  Plaintiff is a California resident with physical disabilities. He suffers from arthrogryposis, cannot walk, and uses a wheelchair for mobility.

2.  Defendants Pramote Sookprasert and Panawadee Sookprasert owned

Complaint

the real property located at or about 22720 Alessandro Blvd., Moreno Valley, California, in January 2019.

3. Defendants Pramote Sookprasert and Panawadee Sookprasert own the real property located at or about 22720 Alessandro Blvd., Moreno Valley, California, currently.

4. Defendant Vichai Jarusrojvuthikul owned Rice and Spice Thai Cuisine located at or about 22720 Alessandro Blvd., Moreno Valley, California, in January 2019.

5. Defendant Vichai Jarusrojvuthikul owns Rice and Spice Thai Cuisine ("Restaurant") located at or about 22720 Alessandro Blvd., Moreno Valley, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of

Complaint

the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Restaurant in January 2019 to eat. This was plaintiff's first visit to this Restaurant. Plaintiff lives nearby and he really enjoyed the food during his first visit. Plaintiff will return once the barriers are removed.

11. The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment.

12. Paths of travel are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

13. Unfortunately, the walkway surface to the entrance of the Restaurant was not maintained by the defendants such that it was stable, firm and slip-resistant because of cracked concrete. Indeed, there are several places in the walkway surface where there were large, cracked spaces.

14. On information and belief, plaintiff alleges that the defendants do not maintain the walkway surface so that the pavement is kept smooth and free of broken asphalt.

15. Additionally, the entrance of the Restaurant had a slope as high as 11% and there was not enough floor space with a level landing.

16. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

17. The transaction counter at the Restaurant was more than 36 inches in height. In fact, the transaction counter was about 41 inches in height.

Complaint

18. There was no lowered, 36 inch portion of the transaction counter at the Restaurant for use by persons in wheelchairs to conduct transactions.

19. Currently, the transaction counter at the Restaurant is more than 36 inches in height.

20. Currently, there is no lowered, 36 inch portion of the transaction counter at the Restaurant for use by persons in wheelchairs to conduct transactions.

21. Dining tables are also one of the facilities, privileges, and advantages offered by defendants to persons of the Restaurant.

22. In the dining area, there were dining tables for customers to dine at. Unfortunately, the dining tables were not accessible for plaintiff. None of the tables had both sufficient toe clearance and knee clearance necessary for plaintiff during his visit.

23. Currently, none of the tables have both sufficient toe clearance and knee clearance necessary for plaintiff.

24. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

25. Unfortunately, even though there was a parking space marked and reserved for persons with disabilities in the parking lot serving the Restaurant during Plaintiff's visit, the parking stall and access aisle were not level with each other. The parking stall and access aisle had inaccessible slopes that exceeded 2.1%.

26. Currently, the parking stall and access aisle are not level with each other.

27. Restrooms are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

28. Unfortunately, the path of travel leading to the restroom was only about 31 inches in width. The plaintiff could not get to the restroom because of the narrow path of travel.

Complaint

29. Plaintiff personally encountered these barriers.

30. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty.

31. Meanwhile, and even though the plaintiff did not personally confront the barriers, the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the finish floor. In fact, the restroom mirror is about 53 inches high.

32. The restroom sink does not provide any knee clearance for wheelchair users.

33. The coat hook is mounted at a height of 65 inches and is not effectively useable by wheelchair users.

34. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

35. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

36. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

37. A common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

38. For example, there are numerous paint/stripe companies that will come

Complaint

and stripe a level parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

39. The mirror could be lowered at little to no cost.

40. Plaintiff will return to the Restaurant to avail himself of its goods or services and to determine compliance with the disability access laws. He is currently deterred from doing so because of his knowledge of the existing barriers. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again.

41. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

42. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

43. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone

who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

44. Ground and floor surfaces must be stable, firm, and slip-resistant. 2010 Standards § 302.1.

45. Here, the failure to provide an accessible ground surface to the entrance of the Restaurant is a violation of the law.

46. The area in front of a doorway must be level and clear. 2010 Standards § 404.2.4.

47. Here, the failure to provide a level landing at the entrance is a violation of the law.

Complaint

48. Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

49. Here, no such accessible counter has been provided in violation of the ADA.

50. Space under an element between the finish floor or ground and 9 inches above the finish floor or ground shall be considered toe clearance and shall comply with 2010 Standards §306.2. However, toe clearance shall extend 17 inches to 25 inches under an element and it shall be at least 30 inches in width. Space extending greater than 6 inches beyond the available knee clearance at 9 inches above the finish floor or ground shall not be considered toe clearance. 2010 Standards §§ 306.2 (1-5).

51. Here, the defendants' failure to provide accessible tables with the proper knee and toe clearances is a violation of the ADA.

52. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

53. Here, the failure to provide level parking stall is a violation of the law.

54. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 2010 Standards § 603.3.

55. Here, the mirror is mounted higher than the maximum permitted and is a violation of the ADA.

56. Sinks must provide knee clearance of at least 9 inches to 27 inches in

Complaint

height. There must also be at least 11 inches of depth. And at least 30 inches in width. 2010 Standards §306.

57. Here, no such knee clearance is provided ill and this is a violation of the ADA.

58. Under the 2010 Standards, the maximum height is 48 inches. 2010 Standards § 308.3.

59. Here, the coat hook is mounted beyond the maximum height requirements in violation of the law.

60. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. The minimum clear width of an accessible route shall be 36 inches. 2010 Standards § 403.5.1.

61. Here, the failure to provide an accessible path of travel to the restroom is a violation of the ADA.

62. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit do not comply with the 1991 Standards.

63. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

64. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

65. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia,

Complaint

that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

66. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

67. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

68. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

Complaint

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 29, 2019        CENTER FOR DISABILITY ACCESS

By: *[signature]*

_____

Chris Carson, Esq.
Attorney for plaintiff